No. 25-2803 & 25-3256 (consol.)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals, | ) Appeal from the United States<br>) District Court for the Southern<br>) District of Illinois |
| Plaintiffs-Appellees, | ) No. 3:18-cv-00156-NJR |
| v. | ) |
| LAMENTA CONWAY, MELVIN HINTON, and LATOYA HUGHES, | ) The Honorable<br>) NANCY J. ROSENSTENGEL,<br>) Chief Judge. |
| Defendants-Appellants. | |

# REPLY BRIEF OF DEFENDANTS-APPELLANTS

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3312

Attorneys for Defendants-Appellants

**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(872) 272-0819
Christina.Hansen@ilag.gov

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......... ii

SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 2

I. An ongoing controversy regarding the Menard injunctions remains .......... 2

II. The district court lacked authority to enter relief based solely on alleged conditions at Menard. .......... 4

A. The Menard injunctions ordered relief that lacks a sufficient nexus to plaintiffs' medical deliberate indifference claim. .......... 4

B. Plaintiffs did not have standing to pursue the Menard injunctions. .......... 8

1. Plaintiffs did not, and could not, assert an individual claim for relief pertaining to conditions at Menard. .......... 8

2. Plaintiffs could not demonstrate standing based on the "legal status" of the certified class. .......... 10

3. The "certified class" did not have standing, and seeking relief on behalf of the class was inconsistent with Rule 23(b)(2). .......... 14

III. Alternatively, this court should vacate the preliminary injunctions on the merits. .......... 16

A. The district court exceeded the scope of its authority to enter injunctive relief under the PLRA. .......... 16

1. The prohibition on confining class members at Menard did not comply with the PLRA. .......... 18

2. Other provisions, including specific requirements for evaluating gender dysphoria and considering transfers, also violated the PLRA. .......... 20

B. The district court clearly erred in finding that defendants acted with deliberate indifference. .......... 22

CONCLUSION .......... 27

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 16

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) .......... 15

*Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*,
928 F.3d 670 (7th Cir. 2019) .......... 5, 6, 8

*Brown v. Plata*,
563 U.S. 493 (2011) .......... 21

*Calhoun v. DeTella*,
319 F.3d 936 (7th Cir. 2023) .......... 10

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 9

*Davis v. Federal Election Comm'n*,
554 U.S. 724 (2008) .......... 11

*De Beers Consol. Mines, Ltd. v. United States*,
325 U.S. 212 (1945) .......... 7

*Devose v. Herrington*,
42 F.3d 470 (8th Cir. 1994) .......... 4

*Dunn v. Dunn*,
219 F.Supp.3d 1100 (M.D. Ala.2016) .......... 14

*Farmer v. Brennan*,
511 U.S. 825 (1994) .......... 7, 22, 24

*Fields v. Smith*,
653 F.3d 550 (7th Cir. 2011) .......... 16

*Frank v. Gaos*,
586 U.S. 485 (2019) .......... 8, 14

*Franks v. Bowman Transp. Co. Inc.*,
424 U.S. 747 (1976) .......... 11

*Helling v. McKinney*,
509 U.S. 25 (1993) .......... 14

*Howe v. Hughes*,
74 F.4th 849 (7th Cir. 2023) .......... 17, 20, 21

*Johnson v. U.S. Off. of Pers. Mgmt.*,
783 F.3d 655 (7th Cir. 2015) .......... 11

*Kaimowitz v. Orlando*,
122 F. 3d 41 (11th Cir. 1997) .......... 5

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 8, 9, 11, 12

*Mays v. Dart*,
974 F.3d 810 (7th Cir. 2020) .......... 20

*Monroe v. Bowman*,
122 F.4th 688 (7th Cir. 2024) .......... 2

*Moore v. Thieret*,
862 F.2d 148 (7th Cir. 1989) .......... 9, 10, 15

*Ollison v. Gossett*,
136 F.4th 729 (7th Cir. 2025) .......... 23

*Pac. Radiation Oncology, LLC v. Queens's Med. Ctr.*,
810 F.3d 631 (9th Cir. 2015) .......... 5

*Payton v. Cnty. of Kane*,
308 F.3d 673 (7th Cir. 2002) .......... 12, 13

*Rasho v. Jeffries*,
22 F.4th 703 (7th Cir. 2022) .......... 17, 19, 22, 23

*Remijas v. Neiman Marcus Grp., Inc.*,
794 F.3d 688 (7th Cir. 2015) .......... 14

*Sosna v. Iowa*,
419 U.S. 393 (1975) .......... 11

*Speech First, Inc. v. Killeen*,
968 F.3d 628 (7th Cir. 2020) .......... 9

*Townsend v. Cooper*,
759 F.3d 678 (7th Cir. 2014) .......... 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9

*Vitek v. Jones*,
445 U.S. 480 (1980) .......... 10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 15

*Walters v. Edgar*,
163 F.3d 430 (7th Cir. 1998) .......... 11

*Westefer v. Neal*,
682 F.3d 679 (7th Cir. 2012) .......... 17, 22

*Whiting v. Wexford Health Sources, Inc.*,
839 F.3d 658 (7th Cir. 2016) .......... 24, 25

*Wilson v. Wexford Health Sources, Inc.*,
932 F.3d 513 (7th Cir. 2019) .......... 22

**Other Authorities**

18 U.S.C § 3626(a)(2) .......... 2

18 U.S.C. § 3626(a)(1) .......... 1, 17, 19

Fed. R. Civ. P. 23(b)(2) .......... 15

Fed. R. Civ. P. 23(c)(5) .......... 16

## SUMMARY OF ARGUMENT

The district court issued a series of successive 90-day preliminary injunctions restricting the incarceration of class members at Menard Correctional Center, the largest of the Department's three maximum-security prisons. That continuing relief was an abuse of discretion because it violated the clear limits on judicial authority to enter prospective relief under the Prison Litigation Reform Act ("PLRA") for several reasons. At the outset, the district court lacked authority to award relief specific to alleged conditions at Menard. That relief did not respond to plaintiffs' medical deliberate indifference claim, the only claim they pleaded in their complaints. Nor could plaintiffs — none of whom lived in or faced a reasonable risk of transfer to Menard when they brought the motions — press that claim as representatives of the certified class, which itself is comprised of many class members who themselves would lack standing to seek that relief.

Putting aside those jurisdictional defects, the Menard injunctions should be vacated on the merits not only because the district court's finding of deliberate indifference was clearly erroneous but also because the injunctive relief was not "narrowly drawn," "necessary to correct" the purported ongoing constitutional violation, or "the least intrusive means" of doing so. 18 U.S.C. § 3626(a)(1). Contrary to the PLRA's requirements, the district court, among other things, (1) imposed mandatory deadlines for the evaluation and diagnosis of gender dysphoria that are untethered to any constitutionally mandated time-frame, and (2) imposed blanket prohibitions on incarcerating class members at Menard instead

of fashioning relief designed to cure any unconstitutional conditions at that facility. As a result, the court impermissibly limited defendants' discretion to manage its maximum-security prison population. And it entered that relief, despite its finding that defendants' policies and procedures provide constitutionally adequate care and evidence that defendants continue to take reasonable steps to treat class members at Menard. Because defendants' efforts belied the court's finding that any defendant acted with the requisite state of mind necessary to establish an Eighth Amendment violation*, vacatur* of the operative injunction is warranted on the merits.

## ARGUMENT

### I. An ongoing controversy regarding the Menard injunctions remains.

As a preliminary matter, plaintiffs contend that the appeals from the September and December 2025 injunctions are moot because those orders expired by operation of the PLRA. AE Br. 24.[1] Defendants do not dispute that each preliminary injunction expired 90 days after its entry under 18 U.S.C § 3626(a)(2). *See Monroe v. Bowman*, 122 F.4th 688, 697-98 (7th Cir. 2024). But an ongoing controversy regarding the preliminary injunction orders nonetheless remains because, on plaintiffs' successive motions, *see* Docs. 1028, 1111, the district court "renewed" the Menard injunction in December 2025 and March 2026. *See* Docs. 1070-71; Docs. 1124-25. The March 2026 injunction is in effect through June 10, 2026. *See* 18 U.S.C. § 3626(a)(2).

---

[1] Consistent with their opening brief, defendants cite the district court docket as "Doc. __ at __." Defendants' opening brief is cited as "AT Br.__," and plaintiffs' brief is cited as "AE Br.__."

Regarding the orders, plaintiffs take issue with defendants' "fram[ing] of the issue," asserting that defendants do not acknowledge that the operative injunction "lessened the administrative burden" by removing the requirement that "all class members must be transferred out of Menard." AE Br. 25-26. But it is plaintiffs who seek to obfuscate this injunction's burden. Each injunction required defendants to "transfer *any* class members housed at Menard to another facility." Doc. 1009 at 1; *see* Doc. 1069 at 1; Doc. 1124 at 1. Defendants therefore had to place all known class members — nearly 70 individuals — out of Menard through December 2025, regardless of whether those individuals had gender dysphoria or merely requested an evaluation. *See* Doc. 213 at 11 (class includes all inmates who seek evaluation for gender dysphoria); Doc. 1081 at 171-74, 221-22, 229. And each renewed injunction prohibits defendants from transferring any "individual already identified as a member of the Plaintiff class" to Menard, again regardless of whether the individual has a confirmed gender dysphoria diagnosis. Doc. 1070 at 31; Doc. 1124 at 2.

The "confirmed diagnosis" modification that plaintiffs highlight provides that for any individual at Menard who makes a new request for evaluation, defendants must (1) conduct the evaluation within 7 days of the inmate's request, (2) conclude any necessary follow-up examination within 21 days of the initial evaluation, (3) confirm any diagnosis within 14 days of the "completed examination," and (4) transfer any class members with a confirmed diagnosis out of Menard within 14 days of the confirmed diagnosis, providing 7-day written notice of the transfer. Doc. 1124 at 2. The modification therefore continues to severely restrict defendants'

discretion to incarcerate class members at Menard by prohibiting transfers of any class member into Menard and requiring transfers of all class members diagnosed with gender dysphoria from Menard. And under *all* iterations of the Menard injunction, that relief was both unwarranted and inconsistent with the PLRA.

## II. The district court lacked authority to enter relief based solely on alleged conditions at Menard.

The district court exceeded its jurisdiction by entering the Menard injunctions for two reasons, both of which warrant reversal. First, the relief was premised on allegations that were outside the scope of plaintiffs' operative complaints. And, more fundamentally, no plaintiff had standing to seek that relief because none could allege that they were suffering an imminent risk of harm from the asserted conditions at Menard.

### A. The Menard injunctions ordered relief that lacks a sufficient nexus to plaintiffs' medical deliberate indifference claim.

Plaintiffs agree that injunctive relief must be of the same character as the final relief sought in the complaint, meaning that it cannot go "beyond the case and controversy before the court" or "surprise defendants." AE Br. 32. But the Menard injunctions did just that. The district court impermissibly allowed plaintiffs to bootstrap a new claim pertaining to specific conditions at Menard onto the medical deliberate indifference claim pleaded in the complaint. Because the Menard allegations were not pleaded in the complaint, the district court abused its discretion in granting the Menard injunctions. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (preliminary injunction to prevent prison officials from retaliating against inmate was outside the scope of medical deliberate indifference claim); *see also Pac.*

*Radiation Oncology, LLC v. Queens's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (preliminary injunction could not assert distinct claim between parties, even if it has "some relevance to those claims")*; Kaimowitz v. Orlando*, 122 F. 3d 41, 43 (11th Cir. 1997) *(*preliminary injunction to address First Amendment injury was outside scope of *qui tam* claim*).*

Plaintiffs dismiss *Devose*, *Pac. Radiation Oncology*, and *Kaimowitz* as nonbinding, arguing that *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670 (7th Cir. 2019), controls, AT Br. 32. But this court's analysis in *Auto Driveaway* is consistent with that of its sister circuits. In *Auto Driveaway*, this court upheld a preliminary injunction against a franchisee that in essence prohibited him and his company from engaging "in any conduct that might violate the non-compete clause of the franchise agreement" during the pendency of the franchisor's action, which asserted claims for breach of contract and misuse of trademarks. 928 F.3d at 673. The court concluded that the franchisor's action plainly presented breach of contract and trademark infringement claims against the franchisee and his companies, such that "nothing covered by the preliminary injunction," which prevented the franchisee from operating any competing business, was outside the parameters of the pleaded claims. *Id.* at 675-76. In other words, the preliminary injunction was proper because it sought an interim award that conformed both to the claims asserted and the relief sought in the complaint. *See id.*

Here, by contrast, plaintiffs' motions did not conform to the sole claim asserted or the relief sought in their complaint, or "simply put the meat on the

bones" of their medical deliberate indifference claim, as plaintiffs put it. AE Br. 32. On the contrary, the Menard injunctions marked a sharp pivot from the complaint's allegations of systemic deficiencies in medical and mental health treatment of gender dysphoria to allegations that defendants were deliberately indifferent to a serious risk to plaintiffs' safety from correctional staff and other inmates at Menard. Specifically, plaintiffs did not raise allegations about, or seek any relief from, assault or harassment aside from misgendering in their complaint. *See* Doc. 1 at 3-12. And while they requested relief pertaining to "social transition," they identified that relief as policies offering "individualized placement determinations, avoidance of cross-gender strip searches, and access to gender affirming clothing and grooming items." *Id.* at 37; *see id.* at 26-27. Based on the complaint, defendants therefore were not "on notice that the lawsuit challenged" conditions pertaining to class members' safety from correctional staff and other inmates at Department facilities. *See Auto Driveaway Franchise Sys.*, 928 F.3d at 675.

Yet plaintiffs sought "preliminary," or interim, relief based on allegations that class members at Menard were subjected to a "pattern and practice of physical and sexual assault by male guards and inmates alike." Doc. 873 at 5. And the district court ordered relief based on this supposed "pattern of serious assaults and disregard for the safety of transgender inmates at Menard." Doc. 1008 at 65; *id.* at 63 (finding that class members "expressed fear for their safety" when in proximity to other Menard inmates); *id.* (defendants "allowed class members" at Menard "to be targeted for mistreatment, misgendering, and assault"); *see also id.* at 65 (nondefendant

warden's decision to place transgender inmates in cell house with no cameras "placed them at continued risk"). Indeed, the court ordered defendants not to incarcerate class members at Menard, despite evidence that other available maximum-security prisons offered fewer mental health resources due to staffing shortages. *See* Doc. 1081 at 184-86.

Although the class members' allegations may implicate their status as transgender individuals, those allegations did not fall within the scope of plaintiffs' medical deliberate indifference claim or put defendants on notice of the nature of the preliminary injunction motions, as plaintiffs contend. AE Br. 34. Instead, the motions raised an analytically distinct claim pertaining to the class members personal vulnerabilities and risk of harm, not their medical or mental health treatment. *See generally Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (failure to protect transgender inmate from assault could support separate Eighth Amendment claim). Indeed, defendants are not aware of any federal case that analyzes transgender inmates' alleged vulnerabilities to victimization as a component of their medical care, nor have plaintiffs (who bear the burden of proof) cited any. *See* AE Br. 31-35. The district court's contrary ruling expanded this action far beyond the scope of plaintiffs' complaint contrary to well-settled principles that limit the court's equitable powers to the specific claim before it. *See De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) (dissolving preliminary injunction that "deal[t] with matter wholly outside the issues in the suit"); *cf. Auto Driveaway*

*Franchise Sys.*, 928 F.3d at 675 (recognizing that preliminary injunction must "fall[ ] within scope of the complaint").

### B. Plaintiffs did not have standing to pursue the Menard injunctions.

The district court lacked jurisdiction to grant the Menard injunctions because plaintiffs also could not show that they had standing to seek that relief. By their own admission, no plaintiff lived in Menard when they brought this claim for relief, or at any time during the 15 months since. *See* Doc. 935 at 2-3; Doc. 978 at 79 (Monroe, Melendez, and Kuykendall were located at Logan Correctional Center; Reed was located at Centralia Correctional Center).[2] Likewise, plaintiffs did not present any evidence supporting a finding that any one of them was likely to be transferred to Menard. Plaintiffs therefore lacked standing to challenge conditions at Menard on behalf of themselves or any member of the class.

#### 1. Plaintiffs did not, and could not, assert an individual claim for relief pertaining to conditions at Menard.

Plaintiffs' concession that they lacked any personal claim for relief pertaining to conditions at Menard, *see* AE Br. 26-31, begins and ends the standing inquiry. It is blackletter law that "federal courts lack jurisdiction if no *named plaintiff* has standing." *Frank v. Gaos*, 586 U.S. 485, 492 (2019) (emphasis added) (vacating judgment approving class settlement to determine whether named plaintiffs had standing); *Lewis v. Casey*, 518 U.S. 343, 356-57 (1996) (vacating injunction that granted remedial relief because it did not correspond to any named plaintiff's injury).

[2] Kuykendall and Reed are no longer plaintiffs in this action, as the former was released from custody and the latter died. *See* Doc. 1125 at 25 n.9.

And because "standing is not dispensed in gross," plaintiffs must demonstrate standing "for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430 (2021). That means plaintiffs could not bring a claim for relief, even as representatives of a certified class, if they lacked standing to initiate the claim. *See id.; Lewis*, 518 U.S. at 356-57.

Here, to satisfy their standing burden at the preliminary injunction stage, at least one plaintiff had to present specific facts demonstrating that she personally suffered an ongoing "concrete and particularized injury" that was both "fairly traceable to the challenged conduct" at Menard and "likely to be redressed by" the Menard injunctions. *Lewis*, 518 U.S. at 358 (plaintiffs must establish standing for every provision of injunction to the manner and degree of evidence required at stage of litigation); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983) (standing is remedy-specific); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020). That required a showing that the asserted injury was "actual or imminent," meaning that it was either occurring or "*certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Evidence of past harm or "*possible* future injury" would not suffice, *id.*; *City of Los Angeles*, 461 U.S. at 104-05. Under that standard, inmates seeking injunctive relief "for a condition specific to a particular prison" must either be living in that prison or "demonstrate that [they are] likely to be retransferred." *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1989); *compare id.* (inmate's prison transfer mooted preliminary injunction appeal because there was "no reason on the present record to suppose that he is likely to be sent back to

Menard") *with Vitek v. Jones*, 445 U.S. 480, 486 (1980) (inmate demonstrated threat of transfer to mental health facility based on history of mental illness and State's representation that he presented danger to himself).

Plaintiffs presented no evidence that they were likely to be transferred to Menard. Although the district court found that "class members continued to be moved to Menard (or were newly identified as transgender)" at Menard during the pendency of the preliminary injunction proceedings, Doc. 1008 at 62, that finding does not satisfy the standing inquiry, which again requires evidence that a named plaintiff was "likely" to be transferred to Menard, *Moore*, 862 F.2d at 150; *cf. Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2023) (transfer mooted claim for relief specific to transferor-prison). But from the outset of the preliminary injunction proceedings, no plaintiff was even assigned to a maximum-security men's prison. *See* Doc. 935 at 2-3; Doc. 978 at 79. Because Menard is predominately a maximum-security prison, with more than 70 percent of its inmates designated for maximum-security housing, Doc. 976 at 104, the mere likelihood that a plaintiff could be transferred to Menard was "too slight" to support standing, *Moore*, 862 F.2d at 150.

**2. Plaintiffs could not demonstrate standing based on the "legal status" of the certified class.**

Plaintiffs argue that even without a personal interest, they could pursue the Menard injunctions as appointed representatives of the certified class, which had its "own legal status." AE Br. 27-28. But that argument is foreclosed by binding precedent requiring named plaintiffs to have individual standing for "each claim [they] seek[ ] to press and for each form of relief that is sought." *Davis v. Federal*

*Election Comm'n*, 554 U.S. 724, 734 (2008); *see Lewis*, 518 U.S. 356-57; *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 661-62 (7th Cir. 2015) (plaintiff's injury must match the legal problem alleged).

Plaintiffs' cited authorities, *Franks v. Bowman Transp. Co. Inc.*, 424 U.S. 747 (1976), and *Sosna v. Iowa*, 419 U.S. 393 (1975), AE Br. 27, do not alter the analysis. In *Sosna*, the Court concluded that even though the plaintiff's claim challenging a durational residency requirement on behalf of herself and a certified class became moot on appeal, she could still press the appeal on the class's behalf. 419 U.S. at 401-02. As the Court explained, the mootness of the plaintiff's claim did not extinguish the claims of other unnamed class members, so terminating the action would deprive them of appellate review. *Id.* at 401-02. Following *Sosna*, the Court concluded in *Franks* that a certified subclass of applicants who prevailed in establishing that a prospective employer used racially discriminatory hiring practices also could press their appeal of the damages award, even after the subclass representative's claim became moot. 424 U.S. at 751-53. The Court again explained that because a "live controversy" remained as to the certified subclass's entitlement to relief, the entire appeal was not moot and could proceed with a new class representative. *See id.*

As this court has recognized, the principle articulated in *Sosna* and *Franks* does *not* apply if the named plaintiffs lacked standing to bring their claim in the first place. *See Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998). That is because if a plaintiff without standing initiated the claim, "federal jurisdiction never attached," regardless of whether unnamed class members had standing. *Id.* Indeed, in *Lewis*,

the Court vacated a permanent injunction entered upon the district court's finding that prison officials failed to provide adequate access to the courts for three categories of inmates — those who were illiterate, on lockdown, and non-English speakers — because it concluded that the named plaintiffs had demonstrated actual injury pertaining only to unaccommodated illiteracy. *Lewis*, 518 U.S. at 358. The court explained that because no plaintiff demonstrated standing to obtain relief pertaining to accommodation of non-English speakers or lockdown inmates, "it [was] necessary to eliminate from the proper scope of the injunction any provisions directed at" accommodating those categories. *Id.*

Plaintiffs attempt to distinguish *Lewis*, arguing that the plaintiffs there were able to demonstrate actual injury for only two class members. *See* AE Br. 29-30. But the Court considered that relevant only to the merits, *i.e.*, whether the inadequacy that caused those class members' injuries "was widespread enough to justify systemwide relief." *Lewis*, 518 U.S. at 358. For standing, it did not matter how many class members were injured, only whether a plaintiff suffered harm triggering the district court's jurisdiction to enter remedial relief. *See id.*

Plaintiffs' reliance on *Payton v. Cnty. of Kane*, 308 F.3d 673 (7th Cir. 2002), is also misplaced, AE Br. 27, because that case addressed standing under the "juridical link" doctrine, which does not apply here. In *Payton*, this court reversed the dismissal of a putative class action brought by former Kane and DuPage County detainees challenging the statutory bail fees charged by officials in 19 counties, including Kane and DuPage, for lack of standing. 308 F.3d at 675-76. The court

concluded that the named plaintiffs had standing to pursue their individual claims, along with a class claim against the defendants from Kane and DuPage counties, where the detainees were subjected to the challenged fees. *Id.* at 677. As to the remaining 17 counties, the court concluded that a question remained as to whether the plaintiffs could also sue the defendants from those counties, even without a personal claim against them, on the theory that all defendants were "juridically linked," meaning that they all were bound by and followed the same state law that caused all detainees' alleged injuries. *Id.* at 678-79. But as the court made clear, application of the juridical link doctrine does not alter the rule that a plaintiff "cannot predicate standing on injury which he does not share." *Id.* at 682.

Here, the juridical link doctrine does not apply. Plaintiffs lack standing not because of who they sued, but because they could not show that they had any personal claim against any defendant pertaining to the preliminary relief they sought. For that matter, plaintiffs also could not demonstrate the requisite link between the injuries alleged in the Menard injunction proceedings and their own conditions. That is because the preliminary injunction motions were premised on allegations that conditions at Menard exposed class members to a "culture of disrespect, harassment, and violence by Menard correctional officers" that was unique to that facility. Doc. 1070 at 25; Doc. 1008 at 64-65. In short, unlike in *Payton*, plaintiffs here did not seek relief for any harm they allegedly were suffering but instead seek to assert standing on behalf of unnamed class members to obtain

relief for those individuals' asserted injuries, which plaintiffs did not share. Under *Payton*, they lacked standing to bring the claim.

**3. The "certified class" did not have standing, and seeking relief on behalf of the class was inconsistent with Rule 23(b)(2).**

Plaintiffs also argue that the "certified class" had standing to seek the Menard injunctions. AE Br. 28. But, again, that argument clashes with well-settled law that requires a named plaintiff to have standing to pursue each claim for relief asserted in a proposed class action. *See Frank*, 586 U.S. at 492. *Remijas v. Neiman Marcus Grp., Inc.*, 794 F.3d 688, 691-92 (7th Cir. 2015), on which plaintiffs rely, AE Br. 28, is consistent with this precedent because, although the court there made reference to the "standing of class members," nothing in the court's analysis suggested that the named plaintiffs themselves did not share the same alleged injuries as all class members.

Nor could plaintiffs establish that the "certified class," as a whole, had standing to pursue relief pertaining to Menard because of some theoretical risk of exposure to harm there, AE Br. 28-29, absent a showing that plaintiffs were likely to be transferred there, *see supra* pp. 9-10. Indeed, none of plaintiffs' cited authorities support that proposition. In *Helling v. McKinney*, 509 U.S. 25, 33 (1993), for example, the Court recognized that an inmate may state a claim under the Eighth Amendment by alleging that exposure to environmental hazards in his prison caused "an unreasonable risk of serious damage to his future health." Likewise, in *Dunn v. Dunn*, 219 F.Supp.3d 1100, 1123 (M.D. Ala.2016), a district court concluded that

inmates with serious mental illnesses stated a claim for injunctive relief by alleging "a high likelihood of fairly imminent harm" from "severe inadequacies" in prison healthcare resources. Thus, in both cases, the plaintiffs alleged personal exposure to prison conditions that were likely to cause harm. But here, plaintiffs did not demonstrate that they were likely to be exposed to conditions at Menard. While the district court found that some class members were confined at Menard or "face[d] the possibility of transfer there," those findings did not suffice to establish standing, which required plaintiffs to demonstrate more than a theoretical possibility that *they* would be transferred to Menard. *See Moore*, 862 F.2d at 150.

Further, plaintiffs do not dispute that the Menard motions were procedurally improper under Fed. R. Civ. P. 23(b)(2). *See* AE Br. 26-36. Nor could they. Rule 23(b)(2) permits a plaintiff to proceed on a class claim only when "final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). It requires a finding that "a single injunction will provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). It does not authorize class certification when individual class members "would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* at 360 (emphasis in original).

But plaintiffs' preliminary injunction motions alleged new facts and asserted a new claim that plaintiffs did not have a personal interest in pursuing. *See Arreola v. Godinez*, 546 F.3d 788, 799 (7th Cir. 2008) (inmate whose claim for injunctive relief was mooted when he transferred out of jail could not serve as representative of class

for injunctive relief). It was therefore necessary to certify a subclass and appoint an adequate representative to press that claim. *See* Fed. R. Civ. P. 23(c)(5); *see also* *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (subclasses are appropriate when "interests of those within the single class are not aligned"). The injunctions may be vacated on this basis, as well.

## III. Alternatively, this court should vacate the preliminary injunctions on the merits.

Even if the district court had authority to enter remedial relief pertaining to Menard, its orders should be vacated on the merits because the evidence did not support its finding of a likelihood that defendants were deliberately indifferent to the serious medical needs of inmates with gender dysphoria. And regardless, the court exceeded the scope of its authority under the PLRA because the injunctive relief was not narrowly drawn nor the least intrusive means necessary to correct the purported Eighth Amendment violation.

### A. The district court exceeded the scope of its authority to enter injunctive relief under the PLRA.

As a threshold matter, defendants did not waive or forfeit their PLRA arguments by failing to develop them below, as plaintiffs contend. AE Br. 47-48. In *Fields v. Smith*, 653 F.3d 550 (7th Cir. 2011), this court considered whether an injunction complied with the PLRA, even after finding that the defendants affirmatively admitted in the district court that the disputed relief was "as narrow as is required." *Id.* at 558-59. Defendants made no similar concessions here, but *vacatur* would be required even if they had.

In their response to plaintiffs' first preliminary injunction motion, defendants identified the relevant standard and cited the applicable authority in support of their argument that the proposed prohibition on placing class members at Menard was not tailored to achieve the constitutional floor for gender dysphoria treatment, *see* Doc. 892 at 21-22, thereby identifying the issue for the district court. And in connection with plaintiffs' renewed motion, the district court acknowledged defendants' continuing objection to the scope of relief, as well as their prerogative not to suggest alternative terms, given that they did not "bear the burden of showing that an order violates the PLRA." Doc. 1070 at 30. The record thus belies a finding of waiver or forfeiture.

Further, the preliminary injunctions should be vacated because they do not comport with the PLRA, which requires any remedial injunctive relief concerning prison conditions to be "narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citing 18 U.S.C. § 3626(a)(1)). As this court has admonished, the PLRA requires that courts limit relief to what is "constitutionally *required*." *Rasho v. Jeffries*, 22 F.4th 703, 711-12 (7th Cir. 2022) (emphasis in original). That means that a court may enter only such relief as is necessary to achieve the "constitutional floor." *Id.* (injunction requiring defendants to maintain specific personnel numbers and perform seven-day mental health checks was overbroad); *see also Howe v. Hughes*, 74 F.4th 849, 857-58 (7th Cir. 2023) (injunction requiring defendants to

provide more therapy hours than constitutionally required and dictating programs and vendors was overbroad). Both the specific prohibition against confining class members at Menard and other broader requirements, including those for evaluating gender dysphoria and transfers, violate that standard.

### 1. The prohibition on confining class members at Menard did not comply with the PLRA.

The prohibition on incarcerating class members at Menard violated the need-narrowness-intrusiveness requirement in the PLRA because it was untethered from any analysis of what is "constitutionally required" to treat inmates with gender dysphoria. *Rasho*, 22 F.4th at 712. Indeed, the district court did not analyze the constitutional floor, or fashion relief to correct the issues that it identified at Menard. It instead imposed a blanket prohibition on confining class members at Menard, which deprived defendants of the flexibility to manage the Department's maximum-security facilities. By prohibiting defendants from assigning or transferring class members to Menard — one of only three available maximum-security prisons in the State, Doc. 1081 at 225 — the court unnecessarily curbed defendants' discretion to make placement decisions based on staffing and other resources.[3]

Plaintiffs nonetheless raise a host of arguments defending the injunctions, none of which demonstrates any relationship between the ordered relief and the

---

[3] Plaintiffs insist that there are "at least five prisons with maximum-security units," based on a footnote in the district court's September 2025 order, which cited the Department's website. AE Br. 52. But the Department's Assistant Programs Manager later testified, and the court found, that only three maximum-security facilities were available: Lawrence, Pontiac, and Menard. Doc. 1070 at 13-14; Doc. 1081 at 225-26; *see also* Doc. 1081 at 171-72.

constitutional floor for gender dysphoria care. For example, plaintiffs argue that the mandated transfers were "necessary" due to evidence of "pervasive and uniquely intractable problems at Menard," along with defendants' purported failure to present evidence of conditions at Menard. AE Br. 49-51. But plaintiffs confuse what may be relevant to a finding of deliberate indifference with the determination of what relief is "necessary to correct a Federal rights violation" under the PLRA. 18 U.S.C. § 3626(a)(1). As this court explained in *Rasho*, a defendant's purported "history of noncompliance" does not matter to the PLRA analysis because it does not "dilute the PLRA's remedial limitations." 22 F.4th at 713.

In the same vein, plaintiffs contend that the successive injunction was "necessary" because "little had been done" to address asserted deficiencies at Menard between September and December 2025. AT Br. 50-51. But over that period, defendants had to accomplish the transfers of all class members — then roughly 70 in total — out of Menard, including all prerequisite steps, such as preparing evaluations and written notices. *See* Doc. 1071; Doc. 1081 at 171. Beyond that, as the district court acknowledged, few-to-no class members were incarcerated at Menard by October 2025, making it is unclear what steps defendants could take to avoid a finding that "little at Menard had changed." Doc. 1070 at 26.

Plaintiffs also assert that the injunctions were necessary because defendants did "not identify any evidence in the record to show that it was not necessary." AE Br. 50-51. That circular argument misapprehends the parties' burdens. As the party seeking preliminary injunctive relief, plaintiffs bore the burden to "make a strong

showing" of entitlement to relief at every stage of the proceeding. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020); *see also* Doc. 1070 at 29-30 (acknowledging that defendants did not bear burden to ensure relief complies with PLRA).

Next, plaintiffs contend that the prohibition on confining inmates at Menard was not overbroad because the district court estimated that it posed a relatively low burden and promoted efficiency, while allowing defendants to retain discretion to choose transferee prisons. AE Br. 52-54. But plaintiffs ignore that the relevant inquiry is *not* merely how burdensome the injunction is, but whether it is closely tied to, and the least intrusive means of, achieving the constitutional floor. *See Howe*, 74 F.4th at 853 (injunctive relief that did not have "constitutional hook" could not meet the least intrusive means requirement). Here, the prohibition on confining class members at Menard had no "constitutional hook" because it did not mandate only such relief as was necessary to correct each violation that the district court found. *See id.*

### 2. Other provisions, including specific requirements for evaluating gender dysphoria and considering transfers, also violated the PLRA.

The injunctions' other provisions, including the continuing-evaluation mandate, which sets mandatory deadlines for new gender dysphoria evaluations, diagnoses, and transfers at Menard, Doc. 1071, also run afoul of the PLRA. As this court recognized in *Westefer*, *Rasho*, and *Howe*, an injunction that sets numeric benchmarks or requirements cannot do so at a level that exceeds the constitutional floor." *E.g.*, *Howe*, 74 F.4th at 857. That means that fact-finding is required to

ensure that the injunction does not extend further than necessary to correct the asserted violation. *Id.*; *see Brown v. Plata*, 563 U.S. 493, 538-41 (2011) (upholding injunctive relief requiring specific population-reduction method after extensive fact-finding). Yet the injunctions require defendants to conduct Menard evaluations within 7 days, complete the diagnosis within 14 days of evaluation, and effect any necessary transfer within 21 days of diagnosis, while providing 7 days' advanced written notice of the transfer, Doc. 1071, without any evidence that those short windows are required to achieve constitutional compliance.

Plaintiffs do not contend that these time limits are grounded in the constitutional floor for gender dysphoria treatment. Instead, they argue that the time-frames were "necessary" to meet Fed. R. Civ. P. 65's specificity requirement, AE Br. 55, an argument squarely foreclosed by *Howe* and *Rasho*, which admonish that numerical benchmarks must be well-supported by evidence in the record, *Howe*, 74 F.4th at 857; *Rasho*, 22 F.4th 712-13. Equally unavailing is plaintiffs' suggestion that defendants "acquiesced" to those timeframes in the December 2025 injunction because they sought relief from the ongoing transfer mandate and presented evidence of the dramatic increase in requests for gender dysphoria evaluations that it caused. *See* AE Br. 55-56. But presenting evidence of the provision's overbreadth did not amount to acquiescence of the court's modification or relieve the court of its obligation to fashion relief that satisfies the PLRA's requirements.

Plaintiffs also argue that the timeframes are not overbroad because they comport with the Department's administrative directive, which also provides that an

evaluation for gender dysphoria will be completed within seven days for any inmate who newly discloses gender incongruence status. *Id.* at 54-56. But the preliminary injunctions go beyond the Department's directive by mandating the timing of confirmation of a diagnosis, as well as a transfer and written notice requirements. *See* A.D. 04.03.104 at 3. Moreover, the district court could not "constitutionalize" defendants' administrative directive or other policies by incorporating their provisions into an injunction. *See Westefer*, 682 F.3d at 684 (injunction incorporating defendants' voluntary transfer policy violated PLRA because it called for more process than was constitutionally required).

In short, the district court abused its discretion in entering the preliminary injunctions because their prohibition on placing class members at Menard, as well as the other related requirements, were not narrowly tailored or the least intrusive means of correcting any Eighth Amendment violation.

### B. The district court clearly erred in finding that defendants acted with deliberate indifference.

An Eighth Amendment claim alleging deliberate indifference to a serious medical need contains both an objective and a subjective component. *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014). To satisfy the subjective component, a prisoner must prove that the defendant both knew of and disregarded an excessive risk to his health or safety. *Farmer*, 511 U.S. at 837. Because a "knowing disregard" of a substantial risk of harm is necessary to establish deliberate indifference, *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 520 (7th Cir. 2019), an official's

response to such a risk can satisfy the Eighth Amendment even if the harm is not ultimately averted, *Farmer*, 511 U.S. at 844; *Rasho*, 22 F.4d at 710.

Although plaintiffs contend that "defendants" had actual knowledge regarding conditions at Menard, they rely on evidence that Menard's warden reviewed witness declarations and consulted with the court monitor regarding class members' concerns at the facility. AE Br. 40-41. But plaintiffs did not name the warden as a defendant, nor does the evidence show that the Department administrators they sued were aware of pervasive harassment or abuse by correctional staff or other inmates at Menard. *See Ollison v. Gossett*, 136 F.4th 729, 736 (7th Cir. 2025) (systemic deficiency claim requires showing that defendant was aware of "systemic and gross deficiencies in staffing, facilities, equipment, or procedures"); *Rasho*, 22 F.4th at 710 (subjective state-of-mind element applies to claims alleging "pervasive deficiencies in prison medical treatment"). Indeed, the district court indicated that "prison officials," or "responsible officials," were deliberately indifferent to the class's serious medical needs, Doc. 1070 at 24, while finding that Wills specifically was aware of issues pertaining to Menard's culture, *see id.* at 25-26 (Wills was aware that "little at Menard had changed"). The court, however, did not make any specific finding regarding the subjective awareness of defendants, who were not involved in day-to-day operations at Menard.

Further, plaintiffs erroneously contend that defendants' alleged "inability to implement their policies" demonstrated deliberate indifference. AE Br. 41. An official who responds to a risk of harm by taking measures that he believes will be

effective, and thus acts in good faith, necessarily does not disregard that risk. *See Rasho*, 22 F.4th at 710-12. Otherwise, the subjective inquiry into a prison official's state of mind would improperly turn into an analysis of the objective adequacy of the response, contrary to the principle that an official's actions do not violate the Eighth Amendment simply because they prove unsuccessful. *See Farmer*, 511 U.S. at 844; *see also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (showing that treatment did not work does not establish deliberate indifference absent proof defendant knew it would not work).

Here, the record did not support the district court's finding that defendants acted with deliberate indifference. Even finding plaintiffs' witnesses credible, as the district court did, the evidence showed that defendants took reasonable steps to treat class members' gender dysphoria. Indeed, defendants provided the same medical and mental health treatment at Menard as other Department prisons, including access to qualified mental health professionals, hormone treatment, and a pathway to medically necessary gender-affirming surgery. Doc. 977 at 208, 228-29. Although Menard (and other prisons) experienced some staff shortages, by 2025 defendants had increased mental health staff. Doc. 1081 at 189. Indeed, class members acknowledged that they had access to mental health providers at Menard by May 2025. *See* Doc. 973 at 43-44 (A.M.); *id.* at 124 (J.D.); Doc. 976 at 38-39 (T.S.); Doc. 976 at 84-85 (A.R.); Doc 1081 at 29 (A.R.); Doc. 977 at 17-19 (D.F.). The Department also created a "transgender patient advocate" position to facilitate and support transgender inmates throughout the Department's prisons, Doc. 1081 at 170; Doc.

978 at 8, and appointed a transgender facilitator at Menard to address specific issues there, Doc. 1081 at 189. In short, the evidence did not support a finding that defendants failed to take reasonable steps to meet the class's medical and mental health treatment needs after Spring 2025.

Nonetheless, plaintiffs argue that defendants deprived Menard class members of medically necessary social transition by placing them at Menard without considering their gender identity. AE Br. 41-42. Plaintiffs presented no evidence supporting that contention, nor do they cite any authority establishing that class members' placements in a men's facility violated their Eighth Amendment rights. *See id.* Further, the evidence showed that individualized factors were considered as part of decisions to transfer class members. *See* Doc. 977 at 236-37.

Plaintiffs also argue that class members were subjected to harassment and assault by Menard guards and other inmates. But deliberate indifference does not turn on whether defendants successfully averted harm or "could have done more," *Rasho*, 22 F.4th at 711, but on whether they made constitutionally adequate efforts to treat class members' gender dysphoria, *id.*; *Whiting*, 839 F.3d at 664 (deliberate indifference could not be inferred from evidence that chosen treatment did not work). And here, Menard officials made reasonable efforts to address class members' safety by assigning transgender class members to single cells, *see* Doc. 976 at 97; *see also* Doc. 973 at 40-41 (A.M., single cell); *id.* at 81-82 (D.H. single cell, protective custody); *id.* at 114-15 (J.D., single cell, protective custody); Doc. 976 at 51 (A.R., single cell, protective custody); Doc. 977 at 30, 39 (D.F., single cell, protective custody), and

reporting all class members' allegations of staff misconduct for investigation, *see* Doc. 976 at 93.

In short, this court should reverse the district court's orders and vacate the Menard injunctions because the court clearly erred in concluding that plaintiffs were likely to succeed in establishing an Eighth Amendment violation.

## CONCLUSION

For the foregoing reasons, Defendants-Appellants Latoya Hughes, LaMenta Conway, and Melvin Hinton ask this court to reverse the district court's September 12 and December 11, 2025 orders and vacate the operative preliminary injunction.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

Attorneys for Defendants-Appellants

/s/ Christina T. Hansen
**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(872) 272-0819
Christina.Hansen@ilag.gov

May 13, 2026

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 365, in 12-point Century Schoolbook BT font, and complies with Fed. R. App. P. 32(a)(7)(B)(i) in that the brief contains 6,763 words.

/s/ Christina T. Hansen
CHRISTINA T. HANSEN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(872) 272-0819
Christina.Hansen@ilag.gov

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on May 13, 2026, I electronically filed the foregoing **Reply Brief of Defendants-Appellants** with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participant in this case, named below, is a CM/ECF users and thus will be served by the CM/ECF system:

| | |
|---|---|
| Camille E. Bennett | cbennett@aclu-il.org |
| Michelle Teresa Garcia | mgarcia@aclu-il.org |
| Mason Strand | mstrand@aclu-il.org |
| Amelia Bailey | amelia.bailey@kirkland.com |
| Brent P. Ray | brent.ray@arnoldporter.com |

**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(872) 272-0819
Christina.Hansen@ilag.gov